## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| Zeep Incorporated | § § | Case No. 26-10669-HAC |
|  | § § |  |
| Debtor. | § § |  |

### CASE MANAGEMENT SUMMARY

Zeep Incorporated (the "**Debtor**"), as debtor and debtor-in-possession in the above-captioned bankruptcy case (the "**Bankruptcy Case**"), hereby files its Case Management Summary as follows:

1.      **Description of Debtor's Business**: Debtor is an Austin, Texas based energy company engaged in the development and production of premium fuels and chemicals for supply in both domestic and export markets.  Debtor primarily operates its business through wholly-owned subsidiaries, including Horizon Clean Fuels Terminal, LLC ("**Horizon**"); Zeep Services, LLC ("**Zeep Services**"); Zeep Pipeline Company, LLC ("**Zeep Pipeline**"), and USGC Methanol LLC ("**USGC Methanol**").  Other than Horizon, Zeep's subsidiaries are inactive.

2.      **Locations of Debtor's Operations and whether Leased or Owned**: Debtor's last principal place of business was 12912 Hill Country Blvd., Suite F234, Austin, Texas 78738. Debtor leased this property until September 30, 2025 when the lease was cancelled and terminated by agreement with CSHV HGG RETAIL, LLC, well in advance of the original lease expiration of May 31, 2027.  Debtor's primary assets are located in Theodore, Alabama:

a. Debtor owns a 222.83 acre parcel at Industrial Road and Mitsubishi Lane in Theodore, Alabama.

b. Horizon, a wholly-owned subsidiary of Debtor, leases a 117 acre parcel on the Theodore ship channel. While Horizon is the party to the lease, Debtor's only current source of direct revenue is a net $7,000 monthly fee paid from Horizon's revenues pursuant to a settlement agreement between Debtor, Horizon, and the Lessor/related entities.

3.    **Reasons for Filing Chapter 11:** As noted above, Debtor's subsidiaries other than Horizon are inactive. In September 2021, Debtor purchased the 222.83 "anchor" property at Industrial Road and Mitsubishi Lane. Debtor planned to operate a natural gas "ecosystem" with the anchor property that would house world class export products such as methanol, fuel ammonia and hydrogen, and liquified natural gas ("**LNG**"). Debtor (or Debtor through Horizon) also planned to lease property on the Theodore ship channel to handle the import and export of clean fuels once fully built out, and Debtor also had planned for a 10-mile connector pipeline to be constructed between the properties.

In December 2022, Horizon leased the 117 acre parcel from Michigan Alabama Port Property, LLC ("**Property LLC**"), and Debtor and Horizon entered into various agreements regarding the lease and operations of the property with Property LLC and an affiliate of Property LLC, Michigan AL Investors, LLC ("**Michigan Investors LLC**"). Debtor guaranteed Horizon's obligations under the lease. In June 2023, Michigan Investors LLC loaned Debtor $1,500,000, and Debtor provided a mortgage on the 222.83 anchor property to secure its obligations to Michigan Investors LLC.

2

Unfortunately, Debtor's plans with respect to the project in Theodore did not come to fruition. Because Debtor was unable to construct necessary facilities to complete the "ecosystem" project, Horizon instead developed and operated a transient docking operation on the leased property, pursuant to which vessels may for a fee reserve and use the dock facilities on a short term basis. In September 2025, Debtor, Horizon, Property LLC, and Michigan Investors LLC entered a settlement agreement in a desire to unwind their relationship and settle all possible claims between them. The lease was amended to permit either party to terminate the lease with or without cause upon fifteen (15) days notice and to restrict Horizon's use of the lease property to its transient docking operations. Debtor and Horizon further agreed that a base rent amount under the amended lease would be added each month to the balance of the loan to Debtor that is secured by the anchor property, and Debtor and Horizon agreed to pay Horizon's net income, less reasonable and necessary expenses, to the landlord. Debtor agreed to sell the anchor property and that all amounts due, including $17,500 per month as incurred by Horizon under the amended lease, would be satisfied through the sale.

Since September 2025, Debtor has endeavored to sell the anchor property while Horizon's dock operations continued. Under the various agreements between Debtor, Horizon, Property LLC, and Michigan Investors LLC, Debtor receives a net of $7,000 per month from Horizon's revenues. This is Debtor's only current source of revenue, and Debtor's obligation to Michigan Investors LLC and/or Property LLC is increasing on a greater basis per month than the revenue Debtor receives. Debtor filed Chapter 11 as part of its efforts to unwind the relationships Debtor and Horizon have with Property LLC and Michigan Investors LLC and make arrangements to satisfy claims of other creditors. Debtor had anticipated that Property LLC would terminate the

3

lease before the petition, but that did not happen. Debtor, to the extent necessary, will move to reject the lease.  Once the lease is rejected, Horizon's and Debtor's revenues will be reduced to zero.  Debtor hopes to sell the anchor property, which has an appraised value of $6,000,000.00.  The sale of the anchor property should be sufficient to satisfy Debtor's obligations.

4. **List of Officers and Directors, if applicable, and their salaries and benefits at the time of the filing and during the 1 year prior to filing**: Debtor has four officers and directors as of the Petition Date: (1) Ronald E. Oligney, who is the President and Managing Director; (2) Erin Porterfield, who is Debtor's secretary; (3) Tim Nesler, who is a director; and (4) Jennifer Whitley, who is also a director.  Mr. Oligney does not receive a salary from Debtor but has a claim for independent contractor wages and expenses in the amount of $63,401.11 dating back to 2025.  Ms. Porterfield received consulting payments from Debtor in the amount of $12,500 in the year prior to the Petition Date.  No payments were made to Mr. Timmer or Ms. Whitley in the year prior to filing.

5. **Debtor's annual gross revenues**:  Debtor, either directly or through its wholly-owned subsidiaries, had gross business revenues of $55,213.00, a net of $14,000 to ZEEP, from January 1, 2026 through the Petition Date; and revenues of $813,475.00 in 2025 and $402,378.00 in 2024.  Debtor also had non-business revenue of $724.00 in 2024.

6. **Amounts Owed to Various Classes of Creditors:**

a.    <u>Obligations Owed to Priority Creditors</u>: Debtor owes a total of $143,841.63 to priority creditors.  Some of these are amounts owed to state and local taxing authorities, while others are for priority amounts owed on deferred wages or independent contractor wages.

4

b.    <u>Identity, Collateral, and Amounts Owed to Secured Creditors</u>: Debtor has two secured creditors.  The First is Michigan Investors LLC, which has a mortgage on the 222.83 acre anchor property in Theodore, Alabama.  The amount owed by Debtor to Michigan Investors LLC as of the Petition Date was $1,677,385.50.  The other secured creditor is Ronald Oligney, who also is the Debtor's President and managing director.  Mr. Oligney's claim is in the amount of $255,861.76 and is secured by Debtor's accounts, equipment, good, instruments, domain names, and other intellectual property.  However, given Debtor's limited revenues and the lack of expected future operations, the value of this collateral is likely negligible, though Mr. Oligney's claim is likely secured by any remaining cash collateral that may be generated by Debtor.  To the extent Mr. Oligney has any interest in Debtor's cash collateral, Mr. Oligney has consented to Debtor's use of cash collateral to maintain its post-petition obligations in the ordinary course of its business.

c.    <u>Amount of Unsecured Claims</u>: Debtor owes non-priority, unsecured creditors the amount of $1,664,726.70 as of the Petition Date.

**7.    General Description and Approximate Value of the Debtor's current and fixed assets**:  Other than the anchor property, which has an appraised value of $6,000,000.00, Debtor has minimal current and fixed assets.  It has minimal cash assets with a value of $6,714.76, utility deposits in the amount of $5,485.00, accounts receivable (owed to Horizon, which is owned 100% by Debtor) totaling $23,218.94, office equipment valued at $1,519.00, and Debtor's domain name, which Debtor believes has zero market value.   Debtor also has a net operating loss remaining for Tax Years 2011-2023 in the amount of $23,215,298.  Debtor also has a $2,500,000 D&O tail policy.

5

**8.      Number of Employees and Amounts of Wages Owed as of the Petition Date:**

Debtor had one employee as of the Petition Date, Cheryl Oligney. Ms. Oligney was owed $35,602.56 in deferred wages as of the Petition Date, and $15,150.00 of this amount is a priority debt of Debtor.

**9.      Status of Debtor's Payroll and Sales Tax Obligations, if Applicable**: This is not applicable to Debtor.

**10.      Anticipated Emergency Relief to be Requested within Fourteen (14) days from the Petition Date**: While Debtor does not anticipate filing any motions for emergency relief within fourteen (14) days from the Petition Date, Debtor anticipates that it will file a motion to reject the lease under its terms. Certain pre-petition and post-petition expenses may need to be paid through the rejection date, and such expenses will likely be paid in connection with Debtor's motion to reject the lease. Debtor does not anticipate filing a motion for authority to use cash collateral. Debtor's only secured creditors are Michigan Investors LLC and Mr. Oligney. Michigan Investors LLC has a security interest in the anchor property that should fully secure its claim, and Debtor does not believe Michigan Investors LLC has a security interest in Debtor's cash collateral. Mr. Oligney consents to the Debtor's use of cash collateral to make necessary payments in the ordinary course of business. *See* 11 U.S.C. § 363(c)(2)(A). To the extent Debtor requires additional revenue following the rejection of the lease, Debtor may file a motion for DIP financing to be provided by Mr. Oligney.

[*Remainder of Page Intentionally Blank*]

6

Dated: March 25, 2026

Respectfully submitted,

*/s/ Richard M. Gaal*
RICHARD M. GAAL
rgaal@joneswalker.com
*Proposed Attorney for Debtor*

OF COUNSEL:

JONES WALKER, LLP
11 N. Water St., Ste. 1200
Mobile, AL 36602
Telephone: (251) 432-1414
Fax: (251) 433-4106

## CERTIFICATE OF SERVICE

I certify that on March 25, 2026, I caused a true and correct copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Alabama on the persons referenced below:

Bankruptcy Administrator; mark_zimlich@alsba.uscourts.gov

Bill Bensinger; bdbensinger@csattorneys.com

Thomas B. Humphries; tbhumphries@csattorneys.com

*/s/ Richard M. Gaal*
Richard M. Gaal

7